IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JUANITA KENNEDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:08cv97-WC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Plaintiff Juanita Kennedy applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 404 *et seq.*, and supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. § 1381 *et seq*. Her applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claims. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c),

---

[1]   Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #10); Def.'s Consent to Jurisdiction (Doc. #9). Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.

---

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4]  *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-five years old at the time of the hearing before the ALJ. (Tr. 198). Due to her pregnancy, Plaintiff dropped out of school in the fifth grade. (Tr. 203-04). Plaintiff's past relevant work experience was as a short order cook. (Tr. 200).[5] Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 11, 2004 (Step 1). (Tr. 19). At Step 2, the ALJ found that Plaintiff suffers from the severe impairments of "degenerative joint disease/mild osteoarthritis of the left knee, osteoarthritis of the right thumb, obesity, non-insulin dependent diabetes controlled with diet[,] and hypertension." (Tr. 21). The ALJ next found that Plaintiff's "severe and not severe impairments, considered singularly and in combination, are not of listing level severity." (Step 3) (Tr. 21). Next, the ALJ found that Plaintiff retains the RFC to "perform her past relevant work" and, therefore, is not disabled. (Step 4) (Tr. 23).[6] The ALJ also queried a vocational expert about whether Plaintiff's RFC precludes the performance of the types of jobs identified as Plaintiff's past relevant work. Based on the expert's testimony, the ALJ concluded that, given her age, education, past work experience, and RFC, Plaintiff could

---

[5] Specifically, Plaintiff was employed as a cook by Shoney's for over twenty years. (Tr. 200).

[6] Specifically, the ALJ found that Plaintiff retains the RFC "to perform work within the limitations/considerations as set forth in the functional assessment/medical source statement completed by Dr. Colley [*see* Tr. 133-139] . . . and with the limitations/considerations as set forth in the physical residual functional capacity assessment completed by the State Agency medical consultant [*see* Tr. 140-47] . . . ." (Tr. 24).

perform her past relevant work. (Tr. 22).

## IV.   PLAINTIFF'S CLAIMS

Plaintiff claims that the final decision of the Commissioner is not supported by substantial evidence in the record and submits two discrete arguments in support of her claim:[7] (1) "the ALJ failed to develop the vocational factors including intellectual level and transferability of skills;" and (2) "the ALJ erred in finding [Plaintiff] capable of light work and her past work as a cook." Pl.'s Brief in Support of Complaint (Doc. #13) at 6-10. The Court will address each of Plaintiff's claims in turn.

## V.   DISCUSSION

### A.   *The ALJ's treatment/consideration of Plaintiff's purportedly poor intellectual functioning and transferability of skills.*

Plaintiff contends that, given her age and "marginal education,"

> the ALJ should have obtained [a] psychological consultative evaluation for the purposes of establishing Plaintiff's functional level and also to conduct a mental status exam to determine Plaintiff's ability to perform basic mental work-related tasks such as maintaining concentration, persistence and pace, and understanding and carrying out work instructions. . . . [T]he ALJ's failure to order [a] mental evaluation constituted a failure on his part to properly develop the claim.

Pl.'s Brief in Support of Complaint (Doc. #13) at 6-7. Plaintiff also argues that argues that the ALJ failed to take proper account of Plaintiff's purported lack of transferability of skills.

---

[7] The following are derived from the all-capped headings separately presented in the argument section of Plaintiff's brief.

*Id.* at 7-8. Plaintiff contends that all of these factors - Plaintiff's age, lack of education, and transferability of skills - were essential to a proper determination of Plaintiff's status under the Medical Vocational Guidelines yet were essentially ignored by the ALJ. Defendant submits that, given the ALJ's finding that Plaintiff could perform her past relevant work, the ALJ was not required to grant any more consideration toward Plaintiff's age, intellectual functioning, or transferability of skills because the ALJ was not required to apply the Medical Vocational Guidelines to the disability analysis. Def.'s Brief in Support of the Commissioner's Decision (Doc. #18) at 4. Nor, Defendant argues, did the ALJ err in failing to order a consultative mental examination because Plaintiff has not alleged, much less proven, that her intellectual functioning has deteriorated since she last performed relevant work. *Id.* at 5-6.

To the extent Plaintiff faults the ALJ for failing to take proper account of her age, educational level, and transferability of skills for purposes of an "accurate use of the MVR," her allegation of error is without merit for the reasons stated by Defendant. The ALJ clearly determined that Plaintiff could perform her past relevant work as a cook. Thus, the ALJ was not required to proceed to step five and application of the Medical Vocational Guidelines to determine whether a claimant possessed of Plaintiff's RFC might find employment in significant numbers in the national economy. Accordingly, the ALJ can not be faulted for failing to consider certain factors to allow for an "accurate use of the MVR."

Plaintiff also faults the ALJ for failing to further develop the record by way of

7

ordering a "psychological consultative examination for the purpose of establishing Plaintiff's functional intellectual level and also to conduct a mental status exam." Pl.'s Brief in Support of Complaint (Doc. #13) at 6.  However, Plaintiff presented no evidence prior to the hearing, and points to none now, that her intellectual functioning or "mental status" has deteriorated or was otherwise altered from when she last performed relevant work.  At the hearing before the ALJ, Plaintiff's testimony about her purported limitations consisted only of her admission that she can read "[a] little bit," but also that her job was simple and apparently did not require much in the way of reading.  (Tr. 204-05).

"Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits.  The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).  As noted above, Plaintiff's own testimony about any alleged intellectual or mental limitations was very limited.  Moreover, absent some showing that Plaintiff's "intellectual functioning" or "mental status" has appreciably deteriorated, the fact that she maintained her employment as a cook in a single location for over twenty years militates in favor of the ALJ's determination that her "intellectual functioning" and "mental status" were appropriate for her past relevant work.  Thus, the ALJ had sufficient evidence before him to conclude that Plaintiff's intellectual functioning and mental status did not

preclude her performance of past work.[8]

Because he determined that Plaintiff could return to her past relevant work, the ALJ did not err in failing to consider Plaintiff's "age, educational level, and transferability of skills" to foster an "accurate use of the [Medical Vocational Guidelines]." Likewise, the ALJ did not err in failing to order a consultative psychological examination because the record before him contained sufficient evidence for him to determine whether or not Plaintiff could return to her past relevant work and Plaintiff failed to offer any evidence of her allegedly poor "intellectual functioning" or "mental status."

### B. The ALJ's determination that Plaintiff could perform her past relevant work.

Plaintiff asserts that the ALJ erred in finding Plaintiff could return to her past relevant work as a cook. She claims that the ALJ's finding was based, in part, on his erroneous belief that Plaintiff quit working for reasons unrelated to her impairments. Pl.'s Brief in Support of the Complaint (Doc. #6) at 8-9. Plaintiff also argues that the ALJ arrived at his

---

[8] Arguably the only evidence cited by Plaintiff (*see* Doc. #13 at 6) as indicative of her inadequate "intellectual functioning" or "mental status" is the observation of the Alabama Disability Determination Service interviewer that, during the interview, Plaintiff had difficulty with concentrating and writing. (Tr. 74). However, the interviewer also observed that Plaintiff did not struggle with "understanding," "coherency," or "answering." *Id.* The interviewer also believed that Plaintiff "wants to work if there were something that she could do while not being on her feet all day." (Tr. 74-75). Accordingly, Plaintiff's reliance on the interviewer's observations about her " concentrating" and "writing" appears somewhat misplaced. Given the interviewer's other observations and the lack of any other evidence or testimony from Plaintiff herself, nothing in the record reasonably should have caused the ALJ to order a consultative psychological examination.

determination as a result of his improper rejection of the opinion of her treating physician, Dr. Williams, and the improper crediting of the consultative examination of Dr. Colley (Tr. 133-39) and the RFC assessment of the State Agency physician (Tr. 140-47). *Id.* at 9. Defendant maintains that the ALJ properly determined that Plaintiff's RFC permitted her return to her past relevant work.

In setting forth Plaintiff's RFC, the ALJ wrote "[t]here is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments. When she filed for disability benefits, the claimant reported: I lost my job because the Shoney's closed down." (Tr. 23). Citing to other statements made by Plaintiff in the same report, Plaintiff contends that the ALJ erroneously determined that Plaintiff stopped working for reasons unrelated to her alleged disabilities. However, the other statements attributed to Plaintiff from that report - essentially that her hours were already being reduced due to her ailments before the closure - are of limited, if any, value considering that Plaintiff resumed working as a cook in the same location as the former Shoney's after she made the statements contained in the disability report. *See* Tr. 201-02.[9] Indeed, Plaintiff held this second job for an additional two years, only quitting when "Choo Choo's" itself also closed. Because Plaintiff procured employment and worked for an additional two years after she lost her job with Shoney's, it was not unreasonable for the ALJ to merely point to existing evidence that

---

[9] According to Plaintiff, another restaurant - "Choo Choo's" - briefly inhabited the space formerly occupied by Shoney's and similarly employed her as a cook. (Tr. 201).

10

Plaintiff may have quit her job(s) due to reasons unrelated to her ailments.

Plaintiff also appears to challenge the ALJ's decision to discount the opinion of her treating physician in favor of the opinion of the consultative examiner, Dr. Colley, and the state agency RFC assessment. The treating physician, Dr. Williams, completed a disability questionnaire (Tr. 178) and a medical source statement (Tr. 179-80). The gist of these two documents is that, according to Dr. Williams, Plaintiff is unable to maintain permanent full-time employment due to her hypertension and "marked anxiety," and that she suffers from severe physical functional limitations which had been prevalent for three or four years. The ALJ afforded Dr. Williams's opinion "little weight" because it appeared to the ALJ that Dr. Williams was relying heavily upon the subjective reports of Plaintiff with little scrutiny of her claims. (Tr. 22). The ALJ also found that Dr. Williams's opinion was not bolstered by his own reports and that, in any event, Dr. Williams had only sporadically seen Plaintiff over the years.

When confronted with the opinion of a claimant's treating physician, the ALJ must afford it substantial and considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). *See also Bliss v. Comm'r of Soc. Sec.*, 254 Fed. App'x 757, 758 (11th Cir. 2007) ("An ALJ may reject the opinion of a treating physician, which ordinarily receives substantial weight, where 'good cause' is established."). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating

11

physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (holding the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight").  "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court may not "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 2008 WL 4962696 at *1 (11th Cir. Nov. 21, 2008).

In this instance, as discussed above, the ALJ clearly articulated the reasons why he discounted the opinion of Plaintiff's treating physician and those reasons are supported by substantial evidence.  Among those reasons were the infrequent and distant nature of Dr. Williams's treating relationship with Plaintiff and that the "(1) treating physician's opinion was not bolstered by the evidence [Plaintiff points to no evidence, other than her complaints, which bolsters Dr. Williams's opinion about her purported severe functional limitations]; (2) evidence supported a contrary finding [*inter alia*, Dr. Colley's examination supported the ALJ's finding of a far less restricted RFC]; [and] (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records [Dr. Williams's own

records do not support the severe functional limitations reflected in his medical source statement]." *Phillips*, 357 F.3d at 1240-41. Accordingly, "good cause" supported the ALJ's decision to discount the opinion of Plaintiff's treating physician. *See Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.").

Having determined to discount Dr. Williams's opinion, the evidence in the record supports the ALJ's finding that Plaintiff could return to her past relevant work. After his consultative examination, Dr. Colley provided detailed findings as to Plaintiff's functional capacities. (Tr. 133-39). Subsequently, the state agency physician completed an RFC assessment which reached largely similar findings. (Tr. 140-47). To the extent Plaintiff faults the ALJ for relying upon the findings of Dr. Colley's consultative examination or the state agency RFC assessment in reaching an RFC determination, her claim is without merit. Such opinions, where credible, are important pieces of evidence which an ALJ must consider. *See, e.g.,* 20 C.F.R. § 416.927(f)(2)(I). Plaintiff alludes to nothing, other than her own subjective complaints and the properly discounted opinion of Dr. Williams, to refute the findings of Dr. Colley and the state agency physician. Finally, to ensure that a person with the RFC attributed to Plaintiff could indeed perform Plaintiff's past relevant work, the ALJ obtained the opinion of a vocational expert. After receiving the ALJ's hypothetical which embraced the functional limitations reasonably included in the opinions of Dr. Colley and the state agency physician, the expert confirmed that a person possessing the RFC

attributed to Plaintiff could perform Plaintiff's past relevant work.  Thus, given all of the evidence in the record, substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work.

**VI.     CONCLUSION**

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

DONE this 11th day of May, 2009.

      /s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE